191712 Amanda Sackalowski v. Andrew M. Saul Good morning. May it please the court, my name is Lisa Smaller and I represent the Commissioner of Social Security. This time I'd like to request two minutes of my time be reserved for rebuttal. You may. In this case, the Commissioner does not dispute there were errors in the Under normal circumstances in a case such as this, the District Court would have remanded for further proceedings as the magistrate judge recommended. But here, the District Court reversed the Commissioner's decision and ordered an award of benefits to Ms. Sackalowski without providing any explanation or identifying any evidence to support its order, which is inconsistent with this Court's holding in C.V.V. Barnhart. So the dispute between the parties here is for a defined period of time, because as I understand it, she's now receiving disability, is that correct? That's correct, Your Honor. So what you're fighting about is a two-year period as to whether she was... One year. One year. Within that one year, you're contesting that within that one year, even though she's clearly disabled now. The dispute is between her alleged onset date in March 2015 through the ALJ's decision of December 20th, 2016. So it's approximately 18 months. Just on that same point, to even narrow the dispute potentially somewhat more, the evidence from Dr. Wilson that might bear on the onset date in this dispute? Yes. There's evidence from him about her not being able to make it to work every day or many days. Four days, absolutely. Right. For years. Yes. That evidence, he triggers that as of what date? As of August 1st, 2016. So our contention would be that even if you had accepted that as that could not support the district court's award of benefits as of March 2015. Would you be here if the district court had given some explanation other than his statement, I knew what I did, if the district court had said, look, I've looked at this evidence, and based on this evidence, this woman is disabled. Would we be here? Or is it just because of the sort of opaque nature of the order? Your Honor, it is both the opaque nature of the order and the fact that there is no overwhelming or very strong evidence in this case that would support an award of benefits. But if the district court had made some findings based on the ALJ's, said something other than what he did, would we be here? I still believe we would be here because there is no evidence that could possibly support the award of benefits in this case. So we would still be here contesting the fact that there was an award of benefits. Even if the district court had said, well, in light of the evidence from Dr. Wilson about the absences that are going to be expected that she'd have to take from work, the onset date should be she's disabled going forward. His opinion, as we explained in our briefing, was still unsupported, unexplained, inconsistent with his generally normal examination findings, and he never actually tied the absenteeism to the two impairments that Ms. Sokolowski claims are her primary impairments, migraines and bladder impairments. But if Judge McConnell had said, or Judge Barron just said he may have said, would you be here arguing that he clearly erred? We would still be arguing that this was a case where there should not have been an award of benefits. But obviously it's compelled by the fact, it's made even more difficult or onerous by the fact that he failed to provide any explanation for his award of benefits. If the district court had said the onset date is 2016 in light of the Dr. Wilson evidence, August 2016 in light of the Dr. Wilson evidence, which I realize if he had said that he could not have issued the order that he issued, because it was broader than that. But nonetheless, if he had said that, what would our review be of that determination by the district court de novo? It would still be de novo. But wouldn't it be a factual finding that we would review for clear error? I think it would still be de novo review to determine if in fact there was overwhelming or very clear evidence of an award that was granted and our contention is there's not. Because your argument is the district court is effectively doing a review for substantial evidence of the ALJ. Yes. And then we're reviewing his substantial evidence determination, we review that de novo. Yes. But in this case, other than Dr. Wilson's opinion, which again we contend is not entitled to any sort of controlling or significant weight and neither the magistrate judge nor the district court found it was All that we are left with is Ms. Sakulowsky's allegations regarding her impairments and those by themselves cannot constitute evidence of disability. Can I ask you for the period that's in dispute, how long has she been trying to get these benefits? I believe this case involves her second application for benefits. And what would be the number of years that we're talking about? I'm not sure, your honor. That's it. I mean, we've got At least since 2013, right? Yes. I mean, her application I mean, just as there is that third case at some point, we're talking about an eight-month period maximum, right? August 25th, 2016, potentially. Yes. Till December 2016 is the fight. And this has been a, what, five-year dispute, four-year dispute of that fight. Yes. If we remand it, what's the likely time frame for that getting resolved? Another, what, year, two years? It could be another year or two years. And you could appeal that? Either side could appeal that, depending on what the determination is. That could be another three years for this eight months of benefits for a person who, as of December 2016, is Is a disability. And the burden of that is because the district court wasn't as expressed on its determination as it might need to have been. Yes, your honor. But under the act, the claimant has to show that she's disabled in order to receive benefits. And that has not occurred here. The commissioner's position is that she has an established disability. And in terms of the Well, what's in the record that shows Dr. Wilson's wrong, that she's going to have to miss four days a month, at least? There's nothing in the record that supports that. That's what shows that it is wrong. Because it supports it. Well, she made statements about how she's feeling. She's made statements, but those are just her allegations. What do you have to show that it's wrong? You have a doctor saying this is something. You have her saying, I feel really bad. Usually to reject it, there's got to be something in the record that would say why that isn't. It's simply not borne out by his generally normal examination findings. She was treated by two other neurologists, Dr. Griffith and Dr. Before the date that he identifies as the date that triggers the moment which he says she will have to miss lots of work. Those are 2015 evaluations. Dr. Hickey, I believe, examined her in 2016. She was the most recent neurologist, and she did not opine that Ms. Sackalowski was disabled or that she had any functional restrictions. Was that evaluation after Dr. Wilson's, the period of Dr. Wilson? I believe her examination was in May of 2016, so it did predate it. But she is a neurologist who was actually treating Ms. Sackalowski's migraines, so her findings would have a better understanding of the condition and what limitations it would cause. Thank you. Good morning, and may it please the Court. Good morning. I would like to first address a concession that was made just this morning. In response to your questions about the time period in issue, until a few moments ago, it is the entire period, including the current finding of disability, that was an issue. Each time a claimant comes before an ALJ, it is the entire period that's an issue. And that's a warning that's issued by ALJs frequently, to sort of caution a claimant about the consequences, the potential consequences of an appeal. And that's what happened in this case. You're saying her current status as a disabled person is also an issue on appeal? Yes, Your Honor. As we sit here today, Ms. Sackalowski sits in fear of losing the benefits she's already obtained. That was the issue that was raised before Judge Allman in the oral argument, because just the month before that, in a case on a similarly situated claimant who had applied for benefits, was denied, appealed, followed the course of the appeal through the district court, and while that appeal was pending, filed a subsequent application and was approved, was stripped upon remand, the remand was issued, went back to the same ALJ, who not only decided that she was not disabled in his initial opinion, but also decided that she was not currently disabled. That is something that the, you know, I've had to warn people. I'm sorry, and that's, and I assume that that happened without an appeal of the disability ruling, the contemporary disability ruling? Correct, correct. The claimant was receiving benefits on the subsequent application, and going along, and life was as good as it could get on those. And then as of February, we were sitting there in January in front of Judge Allman, and as of February, Ms. Sackalowski was going to get her first check, and that other claimant was going to get her last check. And not only was she going to get her last check, but she was now exposed to having to pay back what she'd already received, because ALJ Mastrangelo had determined that she was not disabled during any of the period of time. And it took until October and the intercession of Senator Jack Reed to push the claim fast and get a new appeal to the Appeals Council to get that other claimant's benefits restored. So when they concede, I would like, if this case does get re-landed, I would like that to be, you know, part of the case that they are now conceding that they will not reopen that new application, because that is the real fear that Ms. Sackalowski has. It's not the few months that you haven't gotten, but you're concerned that going forward, that this proceeding can result in her loss of the current benefits she has. So under the Social Security regimen, this question of disability is always re-openable, is it not? If somebody actually gets better? Yes, Your Honor. They have a procedure for revealing cases. But you jumpstart that or you sidestep that or overstep it when you come before an adjudicator. So when you come before the ALJ again, he can look at the entire case, including the current disability, unless he's limited by the court or the Appeals Council. And to address what you just asked, it's not just the back pay that we're worried about. It's the back pay and the current thing. But we are worried about the back pay. She went for a long time without any benefits. And, Your Honor, I had asked how long it's been going on. She had a prior application that went all the way through to a hearing in 2013. So I heard in a different context that people make strategic decisions about whether it's worth it to appeal or to start again. And she started over again. So this was the second time that went all the way through. Counseling initiatives, you have to concede that the district judge was a little terse now. Well, Judge McConnell clearly could have and should have probably explained himself better. He didn't explain himself at all. Yes, sir. And neither has the commissioner. The commissioner now has had at least three opportunities to put before this court facts that would support, by a prominence of the evidence, that Mrs. Sakalowski is not disabled. That C.V. standard says that the evidence has to be overwhelming or very strong and not contrary to other evidence. Even in her oral argument today, she can't identify any contrary evidence. All of the evidence suggests that Dr. Wilson's report is well supported. And under the old scheme, would have been or should have been given controlling evidence. Controlling weight. On that account even, doesn't that at least show the district court's order is too broad? Because if you're relying on the Wilson evidence about the absences, doesn't that start at the onset date from August 2016? No, only if you apply something greater than the preponderance of the evidence standard. If you send this back to the judge, he's supposed to apply the preponderance. Just sticking with what you just said was that on their own account, they have nothing to contradict the Wilson evidence. Yes. But the Wilson evidence only pertains from August 2016 on, isn't that right? Yes, he does. So if the basis for concluding that under C.V. there is nothing contrary to evidence supporting a disability finding is the Wilson evidence, then the district court's order is too broad because the Wilson evidence only establishes an onset date of August 2016. What's wrong with that? Well, no, Your Honor, because there's no contrary evidence before it either. You have Mrs. Sokolowski who's there at every turn explaining the same type of headaches. Yeah, but you have the other doctors testifying. Who don't address the same issue. They don't address the issue of absence? No, Your Honor. But does anybody say what number of absences will be in that earlier period? That's a given. The vocational expert, the only person who's opined on it, opined that more than two per month is unacceptable in any regular employment setting. And that's consistent with testimony throughout. Is there medical evidence that said that she would have at least met that two-day-per-month threshold? Prior to the Wilson. Prior to Wilson. Yes, my argument, Judge, was that all of the medical evidence. She's at the doctor so frequently for all of those things that ALJ dispatched at step two even. And, you know, she was including headaches. You're saying her cumulative ailments, not just that we're wrong to focus just on the migraine given her bladder issues and everything else. You're saying all of that would have caused absenteeism more than two days. But is that supported by the record? Yes, Your Honor. And, you know, this court has appealed to common sense in certain cases when the commissioner has said that they can look at the record and make a common sense judgment that the person was capable of work. I think the same thing applies here. There is nothing in the record. Her argument was that some of the records show an absence of some objective findings. And this court addressed that in the Ormond v. Ashtray decision. Objective verification of these matters isn't really possible in most cases. And so my argument is first, as it always has been, that Judge McConnell was correct in doing what he did. And that was the relief that I sought throughout was a remand for payment. And that if you decide that a remand is necessary, that the case must be remanded to a different ALJ because I've demonstrated prejudice in my pleadings in this case. And I will add today that if it is to be remanded, that the commissioner be directed to protect the subsequent allowance and not reopen. Should we remand Judge McConnell to flesh out his findings? Well, I believe if you did, it would only cause another delay in that he can. It would only cause a delay in the back payment. No, a delay. But not in the front payments that she's receiving. A delay in the relief in knowing that she will not lose her benefits that she's waited since at least 2013 to get. And it was sometime before that. I couldn't put my finger on the alleged onset date from the earlier application. But this is a very long time that she was trying to get the benefits. And she finally secured them. You may finish. She finally secured them just prior to that hearing with Magistrate Ullman. And this fight, each part of this fight, causes stress to her knowing that the commissioner is pushing not only to remand the case, to revisit the issue of disability, but to put it in the hands of somebody who I've alleged wrongly stripped a claimant in the same factual circumstance. I will have to withdraw from the case. I still have, as we're standing here, and I put in my pleadings, a complaint against me by the commissioner for withdrawing from cases before this particular ALJ. So I cannot, in my opinion, my professional, I have a professional obligation to get out of the way if the judge won't. And each of those cases, I ask the judge to step aside because we have this case here where I'm alleging abuse of discretion, and it's the same as this, and you should not hear my case if I'm, and his response was to file a complaint against me, which is unresolved. And so I think a remand in this case would cause great harm to Mrs. Sakharovsky in that it delays it. If the court does not restrict the time period, she has to continue to worry, and she will have to get another attorney if ALJ Mastrangelo is kept on the case.  Thank you, Your Honor. Your Honor, I'd just like to briefly respond to two points. First, the commissioner has not conceded that there would be no reopening. The commissioner's regulations speak to when a reopening can occur, and if the circumstances warrant that, then the subsequent allowance would be reopened, but that's based on the circumstances of the case and not the particular ALJ. And as to this other claimant, whose case is not before this court, that claimant was not similarly situated. If you look at the appendix at pages 627 to 629, the appeals counsel ordered the ALJ to reopen the subsequent allowance and consolidate it with the case on remand because there was an overlap between the period covered by the subsequent allowance and the period covered by the remanded case. In this particular case, the award that she has received came from a different ALJ, as I understand it. That is correct. If we send this case back, is brother counsel correct that this will allow you to reopen an award which you have not appealed as part of that remand? It would not automatically be reopened. No, no, no. Can you? Does it allow you? I'm not saying automatic. Would it be allowable? If it fell under one of the factors under the reopening regulations, yes, it could be reopened, but not for the reasons that this other claimant's case was reopened. That other claimant's case was reopened because there was a period, albeit a small period, but there was a period where she was found by the agency to be both disabled and not disabled, and that had to be reconciled. That is not true in this case. Do we have before us any indication in the 2016 ruling, the one going forward, was that based on her absences? Your Honor, all that I can tell from the decision that was appended to Ms. Sakolowski's brief is that the subsequent period contains opinions from three treating specialists, including Dr. Hickey, her neurologist, Dr. Reardon, her urologist, and Dr. Granoff, a podiatrist. And the ALJ in that case found those opinions were entitled to substantial weight. So it's a vastly different record than what's currently before this Court. But Hickey is one of the same treating neurologists that you're saying would contradict Wilson? Even though she's never addressed the absence issue? But then she's relied on by the agency for the finding that she would be absent in 2016? I'm not sure that Dr. Hickey said she would be absent because that evidence isn't before us. But her evidence was part of what was relied on in finding that she was disabled from 2016 going forward? Yes, Your Honor. But you're saying that we should rely on her evidence from before Wilson's evidence to conclude that that's a basis for finding we shouldn't credit Wilson's conclusion that she should be disabled prior to the 2016 new ruling? During the period that encompasses this case, Dr. Hickey treated her on one or two occasions and did not opine that she was disabled or that she was subject to any functional restrictions, which is different than what Dr. Wilson... Did she opine that she was not? No, she did not. Well, then how does that help you in establishing a conflict in the record with respect to the evidence from Dr. Wilson who says that she was? Well, if a specialist who's treating that impairment doesn't say that you're disabled, but a treating practitioner who is not treating that condition specifically says you are, shouldn't more weight be given to the specialist? Was Dr. Hickey asked to opine? No, the plaintiff, Ms. Sokoloski, didn't ask her. Well, suppose Dr. Hickey didn't show up and all you had was Dr. Wilson. It's the same. If she's not asked of the question that Dr. Wilson answered, then how does the fact that she didn't answer it contradict his answer? Ms. Sokoloski was charged with presenting evidence that would support her disability finding. But she did. And it was her choice not to obtain an opinion from any of her treating specialists and only to obtain it from Dr. Wilson. But she got an opinion. But she had an opinion, yes. She had an opinion, but the opinion was not found to be entitled to controlling weight or supported. Was there anything in law that suggests that an unrebutted, uncontradicted statement from a doctor who happens not to be a treating physician cannot be the basis for a finding of disability? No, it can be if it's supported by the record and the ALJ found it was not. Based on what? What did not support it? A treating physician's non-testimony? He found it wasn't consistent with the evidence in the record, and the magistrate judge specifically questioned the fact that he had failed to properly evaluate the opinion on absenteeism, and that was part of the reason it was being sent back so the ALJ could specifically evaluate that part of the opinion. If the Court has no other questions, the Commissioner concludes. Well, just one thing. So there's the Wilson issue, which is from August 2016, but at least there's that evidence of the absenteeism. As I'm hearing you, the thing that supposedly contradicts it is testimony from a treating physician who was not asked about absences, correct? It was her record as a whole, yes. And then your opponent says, if we go back from August 2016, given the nature of her evidence about what she was experiencing, there's no reason, given what she's saying, to think she would not have been absent at least twice a day, and she did put forward evidence to show that if you're absent not twice a day, twice a month, that if you're absent twice a month, then you would be disabled. What do you have to contradict that conclusion? That just a common-sense reading of the record, given that the non-treating physician says, gee, looking at these symptoms, she'd be out four days a week. That's not contradicted. What contradicts the conclusion that if you look at the record from earlier than that, she'd be out at least two days a month? The state agency physicians considered the record through January 2016, and neither of them concluded that she would be, even though they were not specifically asked, they made an assessment of the residual functional capacity, which includes the ability to perform full-time work, and their conclusion was she could perform light work. Then that was at step five, correct? No, Your Honor. I thought it was at step five that she could do some work within the economy. The state agency physicians were giving an opinion as to her residual functional capacity, which is... But that's consistent with Wilson's testimony, who says that even if you had that capacity, you're still out a certain number of days, and that's what makes you disabled. And isn't that a common-sense conclusion to draw, given the ailments that she's describing, that the treating physicians agree she has? I wouldn't concur with that, Your Honor. All we have is her allegations, and no one has found them to be supported by the record. Neither the magistrate judge nor the district court reached that conclusion. Thank you. Her testimony is part of the record, though. Yes, Your Honor, it's part of the record, but as explained in our brief, it cannot be the sole basis for a finding of disability. Thank you. All right, we're going to take a recess. Yeah.